

# NUMBER 13-17-00102-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **MISSION PETROLEUM CARRIERS, INC.,** | **Appellant,** |
| **v.** | |
| **MARY DREESE AND DOLORES PEREZ, INDIVIDUALLY AND ON BEHALF OF FRANCISCO PEREZ; JESSICA M. PEREZ AND JENNIFER L. PEREZ, INDIVIDUALLY AND ON BEHALF OF FRANCISCO PEREZ,** | **Appellees.** |

### On appeal from the 156th District Court of Live Oak County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Hinojosa
### Memorandum Opinion by Justice Benavides

This interlocutory appeal concerns the denial of appellant Mission Petroleum Carriers, Inc.'s (Mission) motion to compel arbitration in a lawsuit brought against it by appellants Mary Dreese and Dolores Perez, individually and on behalf of Francisco Perez

(Plaintiffs) and Jessica M. Perez and Jennifer L. Perez, individually and on behalf of Francisco Perez (Intervenors). We reverse and remand.

## I.  BACKGROUND

In 2014, Francisco Perez died in a Freightliner truck accident on Interstate Highway 37 in Live Oak County. Perez operated the truck as an employee of Mission, which also owned and operated the Freightliner.

In 2015, Plaintiffs and Intervenors filed a wrongful death cause of action against Mission seeking damages resulting from Mission's alleged negligence and gross negligence. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 71.021 (West, Westlaw through 2017 1st C.S.) ("A personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person. The action survives against the liable person and the person's legal representatives.").

Mission answered the lawsuit and filed a motion to compel all parties to arbitration and stay all proceedings. Mission is a non-subscriber to workers' compensation insurance. In its motion to compel, Mission alleged that it is a wholly-owned subsidiary of Tetco, Inc. (Tetco) and that it had adopted Tetco's Employee Health and Safety Plan (the Plan). The Plan provides benefits for medical care, rehabilitative care, wage replacement, dismemberment and permanent impairment benefits, and death benefits for employees who were injured on the job. The Plan includes an arbitration clause, which requires "all claims or disputes," including "all disputed claims for death resulting from an Accident, Occupational Disease or Cumulative Trauma" to be resolved by binding arbitration administered by the American Arbitration Association and governed by the Federal Arbitration Act (FAA). The arbitration clause also requires the employee participant in the

2

Plan to sign an "Arbitration Acknowledgment." Mission attached a separate form signed by Perez entitled "ARBITRATION ACKNOWLEDGMENT." That form contained a provision which stated, in relevant part, that Perez agreed to submit to binding arbitration under the Federal Arbitration Act for: "all claims for death resulting from Accident, Occupational Disease or Cumulative Trauma." Lastly, the Plan included the following provision:

## SECTION EIGHT

## TERMINATION

8.1     <u>Amendment.</u> The provisions of this Plan may be amended at any time and from time to time by the Company; provided, however, that no amendment shall deprive any Participant of any of the benefits to which he or she is entitled under this Plan and which have become payable under the terms of this Plan. The Plan Administrator shall notify all Participants regarding any amendment to the Plan.

8.2     <u>Term of Plan.</u> Although Employer expects to continue the Plan indefinitely, Employer reserves the right to terminate the Plan at any time. This Plan may be terminated by the Employer at any time, provided that the Employer has sent each Participant written notice of its intention to terminate at least thirty (30) days prior to such termination date. For purposes of the foregoing sentence, notice shall be deemed given when such notice is deposited in the United States mail addressed to a Participant at its most recent address as indicated on the records of the Employer. The Employer's failure to give any written notice of its intention to terminate shall not affect the termination of the Plan or create any rights in any Participant, including the Participants to which the notice was not sent. No termination of other Plan will affect any claim for expenses incurred prior to the date of the termination, as permitted by law. In the event of (I) any changes in applicable law or regulations, or (II) judicial decisions that the Employer determines in its sole discretion adversely affects the purpose of this Plan, the Employer may in its sole discretion without notice to any Participant terminate this Plan.

Plaintiffs and Intervenors responded separately to Mission's motion, but each similarly asserted that the arbitration clause at issue is unenforceable because: (1) it is

3

based on an illusory promise because the termination section of the Plan gave Mission unilateral control over the agreement and could allow it to terminate or avoid arbitration, and (2) because such an illusory promise voids the contract as a whole, the agreement cannot be saved by the severability provision; and (3) estoppel does not favor arbitration.

The trial court held a hearing on Mission's motion, and ultimately denied the motion to compel and stay all proceedings. This interlocutory appeal followed. *See id.* § 51.016 (West, Westlaw through 2017 1st C.S.).

## II. MOTION TO COMPEL ARBITRATION

By one issue, Mission asserts that the trial court erred in denying its motion to compel arbitration.

### A. Standard of Review and Applicable Law

We review a denial of a motion to compel arbitration for abuse of discretion. *See Beldon Roofing Co. v. Sunchase IV Homeowners' Assoc., Inc.*, 494 S.W.3d 231, 238 (Tex. App.—Corpus Christi 2015, no pet.). Whether an arbitration agreement is enforceable is subject to de novo review. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). A party seeking to compel arbitration under the FAA, which governs the applicable agreement in this case, must establish that (1) there is a valid arbitration clause, and (2) the claims in the dispute fall within that agreement's scope. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding). The party seeking to avoid arbitration then bears the burden of proving its defenses against enforcing an otherwise valid arbitration provision. *Id.* Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005) (orig. proceeding).

4

**B.      Discussion**

As a threshold argument, Mission contends that the Plaintiffs' and Intervenors' primary challenge brought against the arbitration agreement—that it is illusory—is for the arbitrators to decide, and not the courts.  We agree.

There are two types of challenges to an arbitration provision:   (1) a specific challenge to the validity of the arbitration agreement or clause, and (2) a broader challenge to the entire contract, either on a ground that directly affects the entire agreement, or on the ground that one of the contract's provision is illegal and renders the whole contract invalid.  *In re Labatt*, 279 S.W.3d at 647–48.  A court may determine the first type of challenge, but a challenge to the validity of the contract, and not specifically to the arbitration clause, must go to the arbitrator.  *Id.* at 648.  For example, a claim of fraud in the inducement of the arbitration clause itself may be adjudicated by a court, but a court may not consider a claim of fraud in the inducement of the contract generally.  *See id.* (internal citations omitted).

We first note that the arbitration clause at issue in this case is included as a clause within the larger Plan.  In their responses resisting Mission's motion to compel based upon the argument that the arbitration agreement is illusory, both Plaintiffs and Intervenors cite Mission's "unilateral right to modify and terminate its obligation to arbitrate" based upon the Plan's termination clause.  After examining the termination clause, however, we read that clause as applicable to the entire Plan rather than to the particular arbitration clause at issue in this appeal.  This reading is supported by the plain language of the termination provision, which states that "the *provisions of this Plan* may be amended . . ."  and that Mission "reserves the right to terminate *the Plan* at any time."  (emphasis added).  Stated

another way, the termination provision speaks to the Plan as a whole rather than to isolated parts of the Plan such as the arbitration clause.

Because this termination provision applies to the entire Plan, a challenge to the termination provision is a challenge to the entire contract, rather than a separate arbitration agreement or a specific arbitration clause. Thus, the trial court abused its discretion by addressing these questions rather than allowing an arbitrator to decide them. *See id.* at 647–48; *In re Merrill Lynch Trust Co., FSB*, 235 S.W.3d 185, 190 n. 12 (Tex. 2007) (orig. proceeding) (holding that defenses that relate to the parties' entire contract rather than the arbitration clause alone is a question for the arbitrators rather than the courts); *see also Henry & Sons Construction Co., Inc. v. Campos*, 510 S.W.3d 689, 691–700 (Tex. App.—Corpus Christi 2016, pet. denied) (concluding that a stand-alone dispute resolution policy agreement that covered "all disputes" arising out of an employee's relationship with an employer was unenforceable). We sustain Mission's first issue.

### III. CONCLUSION

For the foregoing reasons, we reverse the trial court's order denying Mission's motion to compel arbitration and stay proceedings and remand to the trial court to enter an order granting Mission's motion to compel arbitration and stay all proceedings.

GINA M. BENAVIDES,
Justice

Delivered and filed the
8th day of March, 2018.

6